**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Crim. No. 06-72 Erie** |
| | ) | |
| **CLEOTIS EUGENE RUSSELL, Jr.** | ) | |
| | ) | |
| **Defendant** | ) | |

<u>**Opinion**</u>

Defendant Cleotis Eugene Russell, Jr. appeared before this Court for resentencing on August 4, 2009.  At Mr. Russell's original sentencing hearing on November 28, 2007, I rejected Mr. Russell's request to vary from the guideline range based on the imbalance in sentencing between crack and powder cocaine.  The United States Court of Appeals for the Third Circuit remanded this case for resentencing because the United States Supreme Court in <u>Kimbrough v. United States</u>, 128 S.Ct. 558 (2007) and <u>Spears v. United States</u>, 129 S.Ct. 840 (2009), effectively overruled <u>United States v. Ricks</u>, 494 F.3d 394 (3d Cir. 2007), a case I relied upon in rejecting Mr. Russell's request for a variance.  At resentencing I applied a 1-to-1 crack-to-powder ratio, an approach to sentencing in crack cocaine cases which I intend to apply in all future crack cocaine sentencings.  I write this Opinion to explain my reasons for this.

I.

Mr. Russell was charged in the Indictment with four counts of Possession with Intent to Distribute and Distribution of Five Grams or More of Cocaine Base in violation of 21 U.S.C.  §§ 841(a)(1) & 841(b)(1)(B)(iii).  On August 21, 2007, Mr. Russell pleaded guilty to all four counts without a plea agreement.

Mr. Russell acknowledged responsibility for 53.1 grams of cocaine base, commonly known as crack cocaine, resulting in an offense level of 30.  The offense level was decreased three levels due to Mr. Russell's timely acceptance of responsibility.  Thus, Mr. Russell's total offense level was 27, and with a Criminal History Category of III, the applicable guideline sentencing range was calculated to be 87 to 108 months' imprisonment.  In addition, Mr. Russell faced a statutory mandatory minimum sentence of 60 months' imprisonment on each count.

At the original sentencing hearing on November 28, 2007, I overruled Mr. Russell's objection to the assessment of one criminal history point for his 2003 marijuana possession conviction, and I denied his motion for downward departure.  As noted, I also declined to vary from the guideline sentencing range based on a disparity in sentencing between crack and powder cocaine defendants.  I imposed a sentence of 87 months' imprisonment.

At resentencing Mr. Russell's counsel submitted a Second Position with Respect to Sentencing Factors, arguing that I should exercise my discretion and impose a sentence using a 1-to-1 crack-powder ratio.  Applying such a ratio in this case results in a total offense level of 13 and a corresponding guideline sentencing range of 18 to 24 months' imprisonment.  Mr. Russell requested that I sentence him to the statutory mandatory minimum sentence of 60 months' imprisonment.  Following the reasoning set forth in United States v. Gully, __ F.Supp.2d __, 2009 WL 1370898 (N.D. Iowa May 18, 2009) and United States v. Lewis, __ F.Supp.2d __, 2009 WL 1591633 (D.D.C. June 9, 2009), I did apply the 1-to-1 crack-powder ratio in this case, and imposed the statutory mandatory minimum of 60 months' imprisonment.

II.

The United States Supreme Court in Spears v. United States, __ U.S. __, 129 S.Ct. 840, 172 L.Ed.2d 596 (2009) (per curiam) held that district courts "are entitled to reject and vary

categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." 129 S.Ct. at 843-44.   In particular, the Supreme Court explained the district court's power as follows:

> A sentencing judge who is given the power to reject the disparity created by the crack-to-powder ratio must also possess the power to apply a different ratio which, in his judgment, corrects the disparity.  Put simply, the ability to reduce a mine-run defendant's sentence necessarily permits adoption of a replacement ratio....

Id. at 843.

I have concluded that there are sound policy reasons for adopting a 1-to-1 crack to powder ratio for all crack cocaine sentencings.   This conclusion is in accord with the United States Department of Justice's position endorsing the elimination of the disparity between crack and powder cocaine in sentencing.  Recently, Attorney General Eric Holder stated:

> It is the view of this Administration that the 100-to-1 crack-powder sentencing ratio is simply wrong.  It is plainly unjust to hand down wildly disparate prison sentences for materially similar crimes.  It is unjust to have a sentencing disparity that disproportionately and illogically affects some racial groups.

Attorney General Eric Holder, Remarks as Prepared for Delivery by Attorney General Eric Holder at the D.C. Court of Appeals Judicial Conference (June 19, 2009) (www.usdoj.gov/ag/speeches/2009/ag-speech-090619.html.)  In addition, Assistant Attorney General Lanny A. Breuer has stated in part as follows:

> [W]e cannot ignore the mounting evidence that the current cocaine sentencing disparity is difficult to justify based on the facts and science, including evidence that crack is not an inherently more addictive substance than powder cocaine.  We know of no other controlled substance where the penalty structure differs so dramatically because of the drug's form.
>      Moreover, the Sentencing Commission has documented that the quantity-based cocaine sentencing scheme often punishes low-level crack offenders far more harshly than similarly situated powder cocaine offenders.   . . .   The impact of these laws has

fueled the belief across the country that federal cocaine laws are unjust.

Restoring Fairness to Federal Sentencing: Addressing the Crack-Powder Disparity: Hearing Before the Subcomm. on Crimes and Drugs of the S. Comm. on the Judiciary, 111th Cong. 1 (2009) (Statement of Lanny A. Breuer, Assistant Attorney Gen. of the Criminal Division, United States Department of Justice, at 9.)  In eliminating the sentencing disparity between crack and powder cocaine the court is still empowered to impose a sentence that "fully accounts for violence, chronic offenders, weapon possession and other aggravating factors associated – in individual cases – with both crack and powder cocaine trafficking." Id. at 10-11.

In addition, I have adopted the reasoning set forth in United States v. Gully, 619 F.Supp.2d 633 (N.D. Iowa 2009), and United States v. Lewis, __ F.Supp.2d __, 2009 WL 1591633 (D.D.C. June 9, 2009).

> As Judge Bennett explained in some detail in Gully, there are at least five distinct policy objections to a disparity--any disparity--between crack and powder cocaine sentences: (1) the current cocaine Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role," Kimbrough v. United States, 128 S.Ct. at 575; see also Spears v. United States, 129 S.Ct. at 843; (2) the assumptions about the relative harmfulness of crack and powder cocaine have not been borne out by the evidence; (3) the crack/powder disparity perversely tends to punish lower-level dealers more harshly than major traffickers because imported powder cocaine is converted into crack at a lower level in the trafficking hierarchy; (4) the 20-to-1 ratio "still improperly uses the quantity ratio as a proxy for various kinds of harm and violence that may or may not come with trafficking of crack cocaine in a particular case"; and (5) the crack/powder disparity fosters disrespect for and mistrust in the criminal justice system because of its disproportionate impact on African American defendants. United States v. Gully, [619 F.Supp.2d at 639, 641], 2009 WL 1370898, at *6-*7.

Lewis, 2009 WL 1591633, at *4.

A significant factor in my decision to reject the 100 to 1 ratio is that such a ratio is a "remarkably blunt instrument" when used as a proxy to punish crack offenders based on the assumption that offenses involving crack are more likely to involve violence, weapons, and higher levels of crime.   Gully, 619 F.Supp.2d at 641.  The better approach is to enhance the sentence of an individual defendant in cases that actually involve violence, weapons, or other aggravating factors, depending as well on whether the particular defendant is a chronic offender. See id. ("the appropriate course is to treat interchangeable forms of cocaine as equivalents, and to enhance punishment when additional criminal effects and use of weapons, for example, are present in a particular case."); and Lewis, 2009 WL 1591633, at *5 (after calculating the 1-to-ratio the court may vary upwardly "to take account of the defendant's history of violence, the use of violence in a particular case, injury to others, the presence or use of firearms or other weapons, or the defendant's recidivism.").

In future crack cocaine cases, therefore, I will use a 1-to-1 crack-to-powder ratio and separately consider any aggravating factors as well as mitigating factors under 18 U.S.C. § 3553(a).  Like the district court in both Gully and Lewis, my method in crack cocaine cases will change only slightly.  I will first calculate the applicable guideline range under the Sentencing Guidelines precisely as I would have done before United States v. Booker, 125 S.Ct. 738 (2005). United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006).  I will also "calculate an alternative sentencing range using a 1-to-1 ratio (by using the powder cocaine Guidelines) and then factor in any appropriate adjustments or departures contained within the Guidelines."  Lewis, 2009 WL 1591633, at *5.  Next, I will "formally rule on the motions of both parties and state on the record whether [I am] granting a departure and how that departure affects the Guidelines calculation." Gunter, 462 F.3d at 247; see also United States v. Lofink, 564 F.3d 232, 238 n.14 (3d Cir. 2009).

Finally, "after giving both sides the chance to argue for the sentences they deem appropriate, [I will] exercise [my] discretion by considering all of the § 3553(a) factors and determining the appropriate sentence to impose."  United States  v. Wise, 515 F.3d 207, 216 (3d Cir. 2008). Specifically, as it relates to crack cocaine sentences, in the final step I will "consider whether it is appropriate to vary from the alternative 1-to-1 sentencing range based on the Court's consideration of the relevant factors set forth in 18 U.S.C. § 3553(a) as they apply to the individual defendant and the particular case--including, but of course not limited to, any aggravating factors such as violence, injury, recidivism or possession or use of weapons."  Id.; see also Gully, 619 F.Supp.2d at 642.  In cases that involve a statutory mandatory minimum sentence, however, I will impose such mandatory sentences.

III.

Applying the approach in this case, as already stated, under the Sentencing Guidelines I find that the offense level is 27 and the Criminal History Category is Roman Numeral III.  The applicable guideline range under the Sentencing Guidelines is therefore 87 to 108 months' imprisonment. I overruled Mr. Russell's objection to the assessment of one point for a 2003 marijuana conviction, a ruling that was upheld on appeal, and I denied Mr. Russell's motion for downward departure, a ruling that was not appealed.  The alternative guideline range calculation using a 1-to-1 ratio with an offense level of 13, results in an alternative advisory guideline range of 18 to 24 months' imprisonment.  This case involves a statutory mandatory minimum sentence of 60 months, which is sentence that I believe is appropriate under all the circumstances of this case.  I therefore imposed a sentence of 60 months.  This sentence is set forth in the Judgment and Commitment order issued on August 6, 2009.

IV.

6

I find that a 1-to-1 crack-to-powder ratio is appropriate in this case and will apply this ratio in all future crack cocaine cases. I will vary from the alternative 1-to-1 sentencing range based on my consideration of the relevant factors set forth in 18 U.S.C. § 3553(a) as they apply to the individual defendant in each case.

_august 12, 2009_
Date

_Maurice B. Cohill, Jr._
Maurice B. Cohill, Jr.,
Senior District Judge